IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BRIAN K. VAZQUEZ,
        Plaintiff,

v.                            Case No. 2:15-cv-09254-JTM

JAMES B. BALDINGER, an individual;
STACEY K. SUTTON, an individual;
DAVID B. ESAU, an individual;
CARLTON FIELDS JORDEN BURT, P.A.,
A Florida professional association;
DANIEL H. SOLOMON, an individual;
CLINT A. BREITHAUPT, an individual;  and
SPRINT NEXTEL CORPORATION, a Kansas
Corporation,
        Defendants.

## MEMORANDUM AND ORDER

Plaintiff Brian Vazquez filed this action in the District Court of Wyandotte County, Kansas.  He alleged a number of malicious prosecution claims stemming from a prior lawsuit by defendant Sprint against Vazquez and his company. After being served with the Wyandotte County suit, Sprint removed the action to this court with the consent of the other defendants. The matter is now before the court on Vazquez's motion to remand the action to state court.

Sprint's notice of removal (Dkt. 1) alleges that this court has federal question jurisdiction, pursuant to 28 U.S.C. § 1331, because the action requires resolution of substantial questions of federal law. Sprint argues that resolution of some of Vazquez's malicious prosecution claims will require construction of the federal laws underlying Sprint's original claims, and will require a determination of the circumstances in which

federal law would recognize a claim. Vazquez, on the other hand, contends the question of whether Sprint had probable cause to bring its prior federal law claims against him is essentially a factual one and, in any event, is not substantial enough to warrant federal question jurisdiction. (Dkt. 14).

**I. Background.**

A. <u>The prior case</u>. In March 2012, Sprint sued Vazquez and his company, The Middle Man, Inc. (hereinafter "TMM"), for damages and injunctive relief stemming from TMM's purchase and resale of Sprint telephones. *See Sprint Nextel Corp. v. The Middle Man, Inc., et al.*, No. 12-cv-2159-JTM (U.S. Dist. Ct., D. Kan). The complaint asserted a multitude of claims, including breach of contract and various torts under Kansas and federal law. The federal law claims were based upon the Lanham Act (15 U.S.C. § 1125) and the Computer Fraud and Abuse Act ("CFAA") (18 U.S.C. § 1030). According to the complaint, Sprint sold new cell phones at a discounted price with the expectation that it would recoup its investment as purchasers paid over time for use of Sprint's cell phone network. Sprint claimed (among other things) that TMM and Vazquez (as CEO of TMM) were buying discounted Sprint phones in bulk and reselling them, with the result that subsequent purchasers were obtaining discounted phones without paying what they otherwise would have paid on Sprint service contracts. Sprint claimed this conduct violated the phone purchase contract and gave rise to damage claims and equitable relief under state and federal law.

In the course of the prior case, the court determined that Sprint's phone purchase contracts prohibited purchasers from reselling their phones. (No. 12-2159, Dkt. 118).

2

The court subsequently granted Sprint's motion for partial summary judgment on its claim for breach of contract against TMM, finding that TMM breached the contract by purchasing phones on its Sprint account and reselling them. (Dkt. 151). Sprint subsequently moved to voluntarily dismiss all of its other claims (including all claims against Vazquez) and to award it nominal damages for the breach of contract by TMM. (Dkt. 153). The court granted that motion and entered judgment accordingly. (Dkts. 157, 166, 169). TMM appealed the judgment; the appeal is now is pending before the Tenth Circuit. (Dkt. 174).

B. <u>Complaint in the instant case.</u>  Vazquez's complaint in the current action alleges that Sprint, with the help of the other named defendants, files false allegations against competitors such as TMM "using cookie-cutter complaints with no bases in fact or law with the purpose of extracting a settlement…." Dkt. 1-1 at 5.  It alleges that defendants knowingly and falsely accused Vazquez of various acts. The first thirteen counts of Vazquez's complaint allege malicious prosecution claims that mirror each of the underlying counts in Sprint's prior complaint, including the counts based on federal law. The complaint additionally asserts claims for abuse of process, intentional and negligent infliction of emotional distress, and defamation.

**II. Legal Standard**

With some limitations, an action brought in state court may be removed to federal court if it is one over which the federal courts have original jurisdiction. 28 U.S.C. § 1441(a).  Section 1331 gives the federal district courts original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."

3

Although this "arising under" jurisdiction is ordinarily invoked when the plaintiff's cause of action is created by federal law, causes of action created by state law may still be considered "arising under" federal law if a federal issue is: (1) necessarily raised; (2) actually disputed; (3) substantial; and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress. *See Gunn v. Minton*, ___U.S.___, 133 S.Ct. 1059 (2013).

The cases qualifying for such treatment are a "special and small category." *Gunn*, 133 S.Ct. at 1064. Jurisdiction is proper over these cases only because there is a "'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended divisions of labor between state and federal courts." *Id*. at 1065.

**III. Discussion**.

A federal issue is necessarily raised "where the vindication of a right under state law necessarily turn[s] on some construction of federal law." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 9 (1983). One element of Vazquez's malicious prosecution claims requires Vazquez to show that Sprint instituted a proceeding against him without probable cause. *See Wilkinson v. Shoney's, Inc.*, 269 Kan. 194, 203, 4 P.3d 1149 (2000). This element could conceivably require a court to construe federal law. For example, Sprint argues that the scope of "trafficking" provisions in the Computer Fraud and Abuse Act must be addressed as part of any probable cause inquiry, with a determination made as to whether TMM's purchase and resale of phones was actionable under those provisions. A similar argument applies to the Lanham Act. Even

4

assuming this is so, however, it does not present a *substantial* federal issue within the meaning of *Gunn*.

*Gunn* made clear "it is not enough that the federal issue be significant to the particular parties in the immediate suit; that will *always* be true when the state claim 'necessarily raise[s]' a disputed federal issue…. *Gunn*, 133 S.Ct. at 1066 (emphasis in original). Rather, the substantiality inquiry looks to "the importance of the issue to the federal system as a whole." *Id*. A review of the issues at stake here shows that a state court's construction of the CFAA and the Lanham Act in the context of state malicious prosecution claims does not impact the federal system in a way that warrants federal question jurisdiction. *See Berg v. Leason*, 32 F.3d 422, 425 (9th Cir. 1994) (no substantial federal issue raised in malicious prosecution claim arising out of federal RICO suit). *Cf. Gunn*, 133 S.Ct. at 1066 (state law action for attorney malpractice stemming from federal patent litigation did not present substantial federal issue).

A determination of whether or not Sprint had grounds to believe Vazquez might be liable under the Lanham Act or the CFAA is more of a fact-bound inquiry than a pure question of law.[1] *See City of Greensburg v. Wisneski*, 75 F.Supp.3d 688 (W.D. Pa. 2015) (whether defendant had reasonable belief that his claims were viable under federal law was fact intensive question). As a fact-intensive question, it is unlikely to impact future cases or the federal system. *See Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 700-01 (2006) (claim was not substantial where it was fact-bound and

---

[1] *See Bergman v. Noah*, 266 Kan. 829, 840, 974 P.2d 520 (1999) (the legal validity of the underlying action is not determinative of probable cause; all that is necessary is that the claimant reasonably believes that there is a sound chance that his claim may be held legally valid upon adjudication).

5

situation-specific). Even to the extent it involves a question of law, a state court's construction of federal law in these circumstances will not be binding in subsequent federal cases and, in any event, the state courts "can be expected to hew closely to the pertinent federal precedents." *Gunn*, 133 S.Ct. at 1067. This is "poles apart" from a situation where a state court's resolution of a federal question "would be controlling in numerous other cases." *Id*. These factors weigh against any finding of substantiality. Also weighing against federal jurisdiction is the lack of any special interest of the government in having this litigation resolved in a federal forum. *Cf. Grable & Sons Metal Prods., Inc. v. Darue Eng. & Manuf.*, 545 U.S. 308 (2005) (in quiet title action involving property sold by the IRS, the government had a special interest in ensuring uniform interpretation of the IRS code and in the availability of a federal forum to vindicate its own administrative action); *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180 (1921) (federal issue was substantial when it directly involved claim that act of Congress was unconstitutional).

In sum, the federal issues raised by Vazquez's malicious prosecution claims are not "substantial" within the meaning of the relevant law, and therefore do not present a basis for federal question jurisdiction. In so finding, the court does not in any way disparage the importance of the case to the parties involved. "But something more, demonstrating that the question is significant to the federal system as a whole, is needed." *Gunn*, 133 S.Ct. at 1068. Because federal question jurisdiction is lacking, the court must grant the motion to remand to state court. In so finding, the court of course

expresses no opinion on the merits of the claims or on defendants' motion for judgment (Dkt. 18), which this court has no jurisdiction to address.

Vazquez asks the court to award him attorneys' fees and costs pursuant to 28 U.S.C. § 1447(c). That section provides that an order of remand "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." Such an award is within the court's discretion. *See Suder v. Blue Circle*, 116 F.3d 1351, 1352 (10th Cir. 1997). Absent unusual circumstances, courts may award attorneys' fees under this provision "only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005). The court declines to award any attorneys' fees or costs in this instance. The Supreme Court has candidly admitted that "arising under" jurisprudence in this context is not only confusing but sometimes resembles a canvas "that Jackson Pollock got to first." *Gunn*, 133 S.Ct. at 1065. With due respect to fans of abstract art, that is not a compliment when it comes to describing the legal standards that parties must rely on to guide their conduct. Defendants' removal, although improper, did not lack an objectively reasonable basis.

**IT IS THEREFORE ORDERED** this 22nd day of December, 2015, that plaintiff's Motion to Remand (Dkt. 13) is GRANTED. The action is hereby remanded to the District Court of Wyandotte County, Kansas.

             \_\_\_\_\_s/ J. Thomas Marten\_\_\_\_\_
             J. THOMAS MARTEN, JUDGE